Good morning, Your Honor. Matthew Collins for Plaintiff Appellant, Martin Construction, Inc. I'd like to reserve five minutes, if I could, for rebuttal. We're here today because I believe the district court simply got the contract dispute wrong. He didn't properly read the terms of the contract and then didn't consider the implications of the uniform commercial code on this particular transaction. In particular, the undisputed facts or the facts submitted to the court by Mr. Martin's affidavit explained that this pipe that was being purchased was being shipped on four trucks. Yeah, and there was a delay in the materials, and as a result, your client got dinged by the State. Among other damages, Your Honor. Yeah, now you're suing for that, and they say, well, these are consequential damages that are barred by the contract. And I think that's, first of all, factual finding. But under the determination that these damages are consequential. What damages were you seeking? They are liquidated damages assessed from the Department of Transportation against my client. There's ---- They were liquidated damages against you, but they sound as though they're consequential damages as against the client. They're delay damages, Your Honor. And under Montana law ---- They come as a consequence of the delay. Yes, but those are recoverable as incidental damages under the UCC. In Meehlin v. International ---- Excuse me. That's a legal question, not a factual question, isn't it? Well, no. I think under the UCC case law, they're saying the demarcation between consequential and direct damages has become a factual issue. I don't understand that. Say that again. The demarcation between what is a consequential damage and a direct or incidental damage can be a factual issue. Well, a jury would never determine that. The court would determine it. I think the jury would be instructed on what damages under 31106 put Martin in as good a position as if the other party had performed. Well, they would decide how much damage is and if any damages, but whether these ---- but if a contract bars certain type of damages, that's a legal determination. You wouldn't submit that to a jury. I think that ---- Because there really isn't a factual dispute about ---- there isn't a factual dispute about what the damages are. So it's what we call them is a legal determination. In Meehlin v. Intermountain Systems, 712P21295 at 1246, the court out of Montana said that materials and labor required to complete the building and for temporary grain storage caused by the delays of the defendant were recoverable incidental damages. Those are not barred by the contract between Martin and Roscoe. It doesn't say you submit that to the jury. It says, as a matter of law, those kinds of things are incidental damages. Well, the judge gave no ---- first of all, he said none of the damages are recoverable because they don't constitute replace or repair damages. That's reading out the types of damages that are available to Martin under paragraph 4 for delays. He conflated the two provisions and said, lookit, paragraph 6 excludes lost profits, consequentials, incidental damages, everything except repair or replacement. What's the difference between an incidental damage and a consequential damage? Incidental damages are those that are incurred dealing with the defendant's delay in delivering the pipe. Just like in Mieland, the ---- And what would consequential damage mean? I'm sorry? In contrast ----     And what would consequential damage be? I'm sorry? In contrast ---- Lost profits. Sorry? Lost profits. Okay. Is the typical ---- Consequential damage is synonymous with lost profits. I think so. Okay. In Mieland, that case before the Montana Supreme Court, the plaintiff bought a building to store grain. He needed it to be 18 feet high. It came in at 16-1⁄2 feet. He was delayed through the harvest season to raise that building to the 18-foot requirement. As a result, he had to go out and pay for storage down the road for his grain during the harvest season. Similarly, we were delayed and incurred additional costs as we waited for Roscoe to perform its obligations to supply us the correct number of nuts and bolts. Well, it's the ---- You know, I'm sort of wondering. We have fairly sophisticated parties here, as far as that goes. And maybe this is a bad contract for your client. But I'm wondering why your client shouldn't have to be held to it from this standpoint. If you're in the construction business, delay is such an obvious part of what problems are in construction. I mean, it's right there. And so if people don't make some sort of, you know, contractual arrangement for something like this, and I know that your client, I guess basically the appellees, they did the plans, and then they sent you these bolts and these pipes. And so your argument is, well, they didn't send the right number, and we wouldn't know about that until we get to the point where we run out of bolts, as far as that goes. But it's like, but right then your client signs something that says 20 days. You've got to complain about something in 20 days. So everyone knew that that, you know, it seems to me sophisticated parties would know that that could be a problem. Yeah. And I agree with you, Your Honor. And I'm not arguing. I don't want you to enforce the terms of this contract. The district court didn't do that. It equated delays at paragraph 4 with defects in the products at paragraph 6. Defects in the products, you bar special, direct, indirect, or consequential damages or claims of labor. That's a defect. We're not claiming a defect. We're claiming under 4, paragraph 4, a delay, which only bars consequential damages or claims for labor. It does not bar the other damages here. The judge read those clauses together. But aren't you claiming a latent defect now? I'm sorry? Aren't you claiming a latent defect now? That goes to paragraph 5, Your Honor. That's the timing of the notice. We're not claiming a defect. We're claiming a delay. A defect in their performance of the contract. I mean, I think that's semantics. Okay. But you're claiming a latent delay now? Their failure to provide them. A latent defect, rather, right now? A latent defect of performance of their contractual obligations, Your Honor. And importantly, to your point about the 20 days, this is not 20 days' problem. If the defect in the material was discovered, they'd have 20 days to respond. In paragraph 5, the trucks arrive. They have bills of latent. We have to mark on those bills of latent if there is a shortage. There's – it's commercially unreasonable to expect any party to be able to determine whether Roskow Steel supplied enough bolts in 103 5-gallon buckets at the time that the material is delivered. And that's what the point of the UCC is, Your Honor, is to understand what is the commercial relationships between these parties. And if Roskow, not Martin, decides to put a time limit on that, it has to be reasonable in light of the circumstances, in light of the latent defect in their performance. Let me ask you about paragraph 4. Let's leave out the latent defects. Let's leave out paragraph 5. Leave out paragraph 6. Focus on paragraph 4. If the damages you are requesting are not consequential damages, paragraph 4 doesn't bar you, correct? Correct. If they are consequential damages under paragraph 4, regardless of paragraph 5, regardless of paragraph 6, if they are consequential damages under paragraph 4, your goose is cooked. Is that right? Yes. Okay. Let me ask you again. Why are not these damages consequential damages? Because under 32-714, direct damages are the loss resulting from ordinary course of events as determined by any reasonable manner. The losses suffered by Martin had four or five categories. There were the liquidated damages. There were the $75,000 that Martin claimed due to lost productivity in the sequence of the work. There was another several tens of thousands of dollars that it incurred having to pay its subcontractors to work around this problem and deal with it. Those are losses resulting from the ordinary course of events. They're not consequential damages. Consequentials are lost opportunity, okay? If I was claiming that my client lost bonding capacity and couldn't go out and get other future work because it was assessed liquidated damages and because of this project, yes, we'd be out of luck for lost profits on future work because of a lack of bonding capacity. These are damages that Martin directly incurred because of their failure to perform their contractual obligations, Your Honor. I see I'm at my 5-minute mark. Thank you, Mr. Collins. Good morning. Good morning, Your Honors. My name is Jared Lefever. I'm the attorney for Roscoe Steele. It's a pleasure to be here today. I would like to start out by stating to the Court that this is not the case of David and Goliath. These are both sophisticated parties. There's a government road contract involved in this case. Martin is a road contractor. Roscoe Steele is a supplier of metal products. A contract was entered into. That is not in dispute. It's not in dispute that the product was delivered in August of 2007. It sat untouched for seven to eight months of a Montana winter, which the Court, I'm sure, can imagine what that is like. Montana law respects and has for a century the parties' freedom to contract, the courts upholding parties' contracts, and not rewriting the terms for the parties. I believe that that is what is at issue in this case, a pure issue of Montana contract law. The first step would be for the Court to interpret the contract. If the Court interprets it in favor of Roscoe Steele, as the district court did, the case ends. That's referred to in Martin's summary judgment response brief. They say that exact thing. They say in that brief, to resolve the pending motion for summary judgment, the Court must first determine the correct interpretation of the contract. If the Court agrees with Roscoe Steele, then the issues of material fact do not need to be considered, and Martin's claims can be dismissed. I think the appellant said something to the effect of when all this came about, that your client wrote a letter and said, it's not really Martin's fault. It's our fault because of the bolts in this, so don't ding him. So why isn't it your fault? Your Honor, I'm not going to deny that that letter is in the record. I'm not going to deny that bolts were not shipped in a proper number. The question before we get to the effect of all those things, and there's a third one, and that is, what does the contract permit in the form of damages? I assume that, I think I can get to the chase a little bit. It doesn't sound as though your client is disputing that it didn't perform timely under the contract. And the question is, what damages are available against your contract as a result of that breach? That's correct, Your Honor. Sure. So your client screwed up. Regrettably. Okay. So the question is, what does he get as a result of your client screwing up? That's right. And I believe that that is the reason we have terms and conditions of a contract, to determine what happens when the contract is not performed correctly. And in that case, sophisticated parties got together, and they agreed upon terms. And the district court looked at the contract, construed those terms, and the terms that they, that he found, which I believe are fully supported by the contract, is that Martin Construction contracted away a host of damages to which it might be entitled to, that it was left with basically replacement parts. Roscoe still has provided those. Contracted away a host of damages. Contracts away consequential damages. Your Honor, I believe that paragraph 6 of the contract, and I hope Your Honors found a good clean copy of that to read. Some of them were a little fuzzy. Page 54 of Martin's excerpts of record has a good one. But paragraph 6 is a very broad disclaimer of damages. It pertains to special, direct, indirect, or consequential damages or claims for labor. That's for breach of warranties, though, isn't it? Your Honor, I submit to you that that is a paragraph that covers the entire contract. Roberts, it's limited to a breach of warranty. Well, certainly, they pled a breach of warranty claim. That's count 3 of the complaint. That can be dismissed out of hand. But what I'm getting at is, I wanted to explore with you what I asked Mr. Collins. It looks like paragraph 4 doesn't permit consequential damages. He says these are not consequential damages. They're incidental damages or something else. Your Honor, I submit that paragraph 4 could control. I believe that paragraph 6 is a, certainly answers the question completely. But paragraph 4 would control inasmuch as it is my position and that of the district courts that these are consequential damages. The case that I submitted in support of that that I don't believe has been rebutted is an Idaho case that I thought involved remarkably similar facts. In that case, there was a general contractor. There was a subcontractor. It was an Idaho road project. There was a failing by the subcontractor supplier to supply, I believe it was some sort of barriers. It failed to do so. There was liquidated damages assessed when the general contractor went over. The general contractor sued the sub. Similar situation. The conclusion of that case was, of course, the general contractor was able to recover on the basis that those damages were consequential damages. That Idaho case is cited directly in my brief. That ---- You have any Montana cases? I don't need to tell you from Billings that Idaho is not Montana. It's not Montana, Your Honor, but it's a neighboring State. I myself am from Idaho and now live in Montana. I believe that Montana is more likely to follow Idaho law than many of these Pennsylvania and New York cases that are cited in the appellant's brief. The judge who was advised of that case looked at it and ruled that in that manner as well. It is my submission that liquidated damages and damages claimed, for instance, by subcontractors who therefore were apparently not able to perform right away, that those all fall under the term consequential damages. What in theory could they have recovered if they had to go out to another supplier and get nuts and bolts at a higher price? They would have been able to recover the difference. I mean, what could they have recovered here? If they had done ---- if they had been able to recover those ---- Recover type damages? Recover. I mean, under the UCC, a party is entitled to cover and then claim for the difference in the price if they had to pay more for the bolts than the contract was, and they can collect the additional amounts. In this case, however, I mean, the parties agreed that Roscoe would be advised of shortages within 20 days and that they would replace those. I mean, they agreed. So but Roscoe designed the whole thing, right? They said what they wanted. You designed it. And so what ---- I guess what would Martin have to do to determine whether there were sufficient bolts for assembly other than what they ---- I mean, as far as I know ---- They know if you designed the whole thing and you sent the pipes and you sent the bolts, how would they know that? I mean, I guess as I stand here now, I don't dispute that they probably had to get them out and, you know, assemble the thing. I know that there was an affidavit to that effect. My point, I guess, is if they couldn't do that in 20 days, then they should have contracted for more than 20 days. The affiant, I believe the president of the company, who put that affidavit in, it sounds like he's portraying himself as an expert in this field about how long it takes to assemble lengths of pipe with bolts. I suppose he should have contracted for more time. The fact of the matter is, if the project hadn't sat from August until April through an eastern Montana winter, I don't think we'd be here today. And so the ---- But everyone, when they signed it, knew that ---- they knew that, right? It's my position that the parties allocated risk when they signed this contract. And the risk was you have 20 days to advise us of shortfalls. And if that wasn't enough time, sophisticated parties are deemed to be able to contract it to protect themselves. What if we were to reach the UCC Leighton defect issue? What's your position on that? Your Honor, first of all, it would be my position that we not reach the issue, that I don't believe it was raised at the lower court. If you look through the complaint, the summary judgment brief, the judge's decision ---- They didn't specifically raise it. But the facts haven't really changed, right? I mean, it's ---- everyone's on notice of sort of what ---- there don't really even seem to be ---- even though appellant's counsel may say that there's things that should go to the jury, that I'm not really seeing disputed facts. I'm just seeing it's an interpretation, a legal interpretation here. Your Honor, to tell you the truth, I'm not entirely sure what they're arguing. I heard them argue earlier that there wasn't a defect, it was only a delay. I thought we had agreed ---- I mean, I thought that had been our position at some point as well. I mean, I'm not sure I'm prepared to stand here and debate the finer points of Montana Leighton defect law. And one of the reasons is, is because it was never researched and discussed at the lower level. So Judge Siebold never had the occasion to explore the depths of that with the parties. I honestly don't think that it was ever before the court that the parties ever had the opportunity to brief. I believe that if there was concerns about Leighton defects, perhaps they should have contracted for additional time, they should have contracted for additional remedies. So, I mean, are you basically saying if we were to reach that, you would need an opportunity to file something supplemental? As to what the effect of a Leighton defect is, I certainly ---- I'm always happy to file supplemental materials if the court would like, though it would be my position that even with a Leighton defect, the parties have contracted to allocate who bore the risk of it. And in this case, the risk was borne by Martin Construction. I believe that's why parties enter into such contracts. The unreasonableness of the 20 days was raised by Martin Construction on appeal, I believe, for the first time on appeal as well. I think that the cases are all distinguishable. I think I put that forth in my brief. I guess I wonder what ---- how much reasonable time they were after. The contract says 20 days. We went one month, two months, all the way up to between seven and eight months. I think that as a matter of law, any sort of reasonableness concern has resolved itself by the facts of the case, which that's certainly not disputed. Your Honor, it's my position, and I would submit to you that this is simply a straightforward interpretation of contract, that the language in paragraph 6 of that contract is a ---- could be viewed as a catch-all, an encompassing paragraph to handle any damage that's under the contract. In the event the Court doesn't view it that way, it may also view the paragraph 4 about consequential damages as covering the damages in this case. As a third fallback, there was a requirement of 20 days. That 20 days was breached. The parties allocated the risk. It would be my request to this Court that the Court affirm the district court. That is the extent of my argument, but I'd be happy to answer any further questions. Thank you, Mr. Lefever. Mr. Collins. Your Honor, with all due respect, counsel didn't even read his contract. It's not 20 days for shortages. It's marking on the bill relating at delivery that there is shortages. The 20 days applies to defects. Second, under 32715, incidental damages are defined as any other reasonable expense incident to the delay. Roscoe sends the letter. I'm sorry. Where are you reading that definition from? Montana Code annotated 32715, subsection 1. Okay. And does Montana follow the UCC? Yes. Okay. In November 3, 2008, ER30 letter from Roscoe Steel to Montana Department of Transportation, these bolts require specialized fabrication at the manufacturer for the structural plate and could not be purchased locally from any source. This is to ensure proper material performance and for warranty purposes. In effect, Martin, through its incurring the damages it did, was covering. It had no opportunity to go out and find different bolts. It had to wait for Roscoe to perform. As a result, it incurred reasonable expense incident to their delay. Well, let me read to you the definition of incidental damages from the UCC, and you can tell me how the damages you're now claiming fit into that definition. Incidental damages cover, quote, expenses reasonably incurred in inspection, receipt, transportation, and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses, or commissions in connection with effecting cover, or any other reasonable expense incident to the delay. So how do the damages you're claiming fit into that, I'll call it a definition, although it's a series of examples of incidental damages? Reasonable expenses incident to the delay. See, the first part of that, Your Honor, I think goes to goods rightfully rejected. Okay? We didn't reject these goods because we couldn't. We're talking about a delay in performance, a defective delay in performance, which are reasonable expenses incident to the delay. Right. But the phrase there is not reasonable expenses or damages caused by the delay. It's incident to the delay. And if we have a sort of, I'll use the Latin, a justem generis, that's at the tail end of all these examples. It suggests that reasonable expenses incident to the delay will be things like the things already discussed. And I think you can go to the next paragraph, subparagraph 2, about consequential damages to help inform what's an incidental. Yeah. Go to that. Okay. Sure. And it says, loss resulting from general or particular requirements and needs of which the seller at the time of contract had a reason to, and which could not reasonably be prevented by cover or otherwise. Here, we were covering. And as a result of it. You didn't. You never covered. You never bought them from somebody else. Because we couldn't. I mean, effectively. You did. What? No, we had to wait for Roscoe to perform. You said we covered. In effect, that's what we were doing. We were covering for their defective performance. That's not the contract definition of cover. You mean cover like cover up or taking care of or shielding from? No. Cover means you buy a replacement. And we couldn't. From somebody else. And we can't. Yeah. Well, you didn't. Yeah. Well, we can't. Because Roscoe wouldn't warranty its pipe if we went and bought different bolts. And they're custom made. In any event, you didn't. And I'm not faulting you for not. No, I understand. So incidental to the delay, I don't know how incurring liquidated damages while we were waiting for them to perform isn't incidental to the delay. We have subcontractors we had to pay $61,000 as a result of their delay, incidental. And our own productivity cost is $75,000, which would be direct damages under 2714. If there's no other questions, thank you, Your Honor. Thank you, Mr. Cohen. Mr. Fever, thank you. The case is submitted.
judges: Silverman, Fletcher, Callahan